UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE EMPLOYMENT LAW GROUP,
P.C.,

      Plaintiff,

      v.

DENNIS BRADY d/b/a SAN DIEGO
EMPLOYMENT LAW GROUP,

      Defendant.

Civil Action No. 20-1852 (JDB)

## MEMORANDUM OPINION

Before the Court is a motion to dismiss filed by defendant Dennis Brady d/b/a San Diego Employment Law Group.  Brady raises a variety of grounds for dismissing plaintiff The Employment Law Group, P.C.'s complaint, including that the Court lacks personal jurisdiction over him.  For the reasons stated below, the Court agrees: this Court does not possess personal jurisdiction over Brady in the present matter.  Rather than dismiss, however, the Court will transfer this case to the Southern District of California pursuant to 28 U.S.C. § 1406(a).

## Background

The Employment Law Group, P.C., ("TELG") is a legal services provider headquartered in Washington, D.C., specializing in (as one might expect) employment law matters such as whistleblower representation and workplace discrimination.  See Compl. [ECF No. 3-1] ¶¶ 2, 11; Compl. Ex. 3 [ECF No. 1-2] at 8–9;[1] see also Mem. in Opp'n to Def.'s Mot. to Dismiss [ECF No. 27] ("Pl.'s Opp'n") at 1.  TELG has used that name since 2000, and it registered trademarks on

---

[1] TELG's exhibits were filed in one combined document, docketed at ECF No. 1-2, which is not internally paginated.  To aid in finding the relevant exhibit, the Court will include the page numbers generated by the ECF system and located in the top right corner of each page.

the name and an associated logo in 2008.  Compl. ¶ 7; Compl. Exs. 1 & 2 at 2, 5.  TELG alleges

that, "[a]s a result of [its] expenditures and efforts, [its mark] has come to signify the high quality

of the services designated by the mark, and has acquired incalculable distinction, reputation, and

goodwill belonging exclusively to TELG."  Compl. ¶ 13.

Defendant Dennis Brady is an attorney in San Diego, California, and one of his several

trade names is "San Diego Employment Law Group" ("SDELG").  See, e.g., Compl. Ex. 4 at 12–

13 (listing other names under which Brady conducts business); Compl. Ex. 5 at 15–16 (screenshots

of the SDELG website).   Brady registered the SDELG name with the state of California in

November 2017, many years after TELG registered its trademark.  Compl. Ex. 4 at 12–13.  Under

the SDELG moniker, Brady seeks out clients in the San Diego area and the Imperial Valley for a

variety of employment law matters, Mem. of P. & A. in Supp of Def.'s Mot. to Dismiss [ECF No.

25-1] ("Def.'s Mot.") at 1 & n.2, including (like TELG) "wrongful termination, discrimination,

sexual harassment, wage and hour claims, [and] whistleblowing," Compl. Ex. 5 at 15.

On June 9, 2020, TELG's attorneys sent Brady a cease-and-desist letter, informing him

that the SDELG name "infringes TELG's rights and is likely to cause confusion with TELG's

marks due to the phonetic and visual similarity of these terms, as well as the fact[] that you are

offering identical or similar legal services through the same market channels in overlapping

geographic markets."  Compl. Ex. 12 at 57–58.  The letter demanded that Brady stop using the

name while also indicating that TELG "prefers not to resort to the courts[] and is therefore open

to an amicable settlement of its claims."  Id. at 58.  Brady responded with a letter of his own, dated

June 15, 2020 and delivered to TELG's counsel in North Carolina.  See Compl. Ex. 6 (the "June

15 Letter") at 19–21.  In that letter, Brady denied that any "reasonable prospective client is likely

to confuse 'San Diego Employment Law Group' with [TELG's] trademarks," id. at 20–21; he

claimed that TELG had "waived its opportunity to bring a trademark enforcement action" by failing to object to newspaper notices regarding Brady's use of the SDELG name, id. at 20; and he accused TELG of violating various state laws and bar rules, infractions which, Brady claimed, call into question the validity of TELG's trademark and/or render the firm unauthorized to practice law in California, id. at 19–20.  He also suggested that he might file a class action lawsuit against TELG, stating that he "know[s] many California employment law attorneys who will not look kindly upon a remote, out of state law firm engaging in the unauthorized practice of law to invade our client base."  Id. at 21.

On July 9, 2020, TELG brought the present suit against Brady,[2] alleging willful infringement of its trademark and unfair competition, both in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125.  See Compl. ¶¶ 35–52.  The following month, Brady sought the Court's permission to proceed pro se, explaining that he is the sole proprietor of SDELG.  See generally Def.'s Mot. for Leave to Represent on a Pro Se Basis SDELG [ECF No. 10].  The Court granted this motion six days later, Min. Order, Aug. 26, 2020, but TELG promptly moved for reconsideration, explaining that it opposed Brady's request on the grounds that he had not adequately demonstrated that SDELG was a sole proprietorship and that his unprofessional conduct up to that point "provides significant concern and an independent basis for the Court not to allow the pro se motion," see Mem. in Supp. of Pl.'s Mot. for Recons. of the Ct.'s Order Granting Dennis Brady's Mot. for Leave to Appear Pro Se [ECF No. 14-1] at 1–2.  The Court eventually denied TELG's motion for reconsideration and permitted Brady to proceed pro se, though not

---

[2] The named defendant in this suit was originally San Diego Law Employment Group in its corporate capacity, but Brady later averred to the Court's satisfaction that SDELG is in fact Brady's sole proprietorship.  As a consequence, alongside its order permitting Brady to proceed pro se in this matter, the Court ordered that "Dennis Brady d/b/a San Diego Employment Law Group" be substituted as the defendant in this action.  See Order, Sept. 2, 2021 [ECF No. 23] at 11.

before expressing concern about Brady's conduct and admonishing both parties to "proceed amicably, professionally, and with redoubled attention to all relevant rules and ethical duties." Order, Sept. 2, 2021, at 10.

Brady filed the present motion on September 23, 2021. He moves for dismissal on three different grounds: (1) the Court lacks personal jurisdiction over him, Def.'s Mot. at 5–8; (2) venue is improper in this District, id. at 8–11; and (3) TELG's complaint fails to state a claim upon which relief can be granted, since the SDELG name does not plausibly infringe on TELG's mark at issue, id. at 12–18, and, according to Brady, "plaintiff is ineligible to practice law in California," id. at 15 (cleaned up). He also asks, in the alternative, that the Court transfer the case to the Southern District of California under 28 U.S.C. § 1404(a). Id. at 18–22.

TELG, naturally, opposes every aspect of Brady's motion, contending that the Court does have personal jurisdiction over Brady, asserting that venue is proper, and vigorously denying Brady's claims that TELG is not authorized to practice law in California. See Pl.'s Opp'n at 5–19. In the alternative, TELG asks that, should the Court identify a deficiency in personal jurisdiction or venue, it transfer the case to the Southern District of California under 28 U.S.C. § 1406(a). Pl.'s Opp'n at 19–20. The motion is fully briefed and, therefore, ripe for decision.

## Analysis

### I. Personal Jurisdiction

The Court begins—and, as it turns out, will end—with its jurisdiction over Brady. A "[p]laintiff bears the burden of establishing personal jurisdiction, and must allege specific facts on which personal jurisdiction can be based; he cannot rely on conclusory allegations." Marsoun v. United States, 525 F. Supp. 2d 206, 211 (D.D.C. 2007) (citing Mwani v. bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005)). In addition, "[i]t is well-settled that [a court] may consider materials outside

4

the pleadings to determine [its] jurisdiction." Kareem v. Haspel, 986 F.3d 859, 866 n.7 (D.C. Cir. 2021) (citing Haase v. Sessions, 835 F.2d 902, 908 (D.C. Cir. 1987)), so "[a]ny declarations or affidavits submitted during briefing are thus fair game for a court deciding a jurisdictional motion." Breeze v. Kabila Inc., Civ. A. No. 21-753 (JDB), 2021 WL 5918678, at *4 (D.D.C. Dec. 15, 2021).

There are two forms of personal jurisdiction: general and specific.  General jurisdiction "extends to 'any and all claims' brought against a defendant," but it applies "only when a defendant is 'essentially at home' in the State." Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021) (quoting Goodyear Dunlop Tires Operations, S. A. v. Brown, 564 U.S. 915, 919 (2011)).  The parties appear to agree that Brady, a resident of California who alleges that he has not been to the District of Columbia since 1972, see Decl. of Dennis N. Brady in Supp. of Def.'s Mot. [ECF No. 25-2] ("Brady Decl.") ¶ 5, is not subject to general jurisdiction in D.C.  See Def.'s Mot. at 6; Pl.'s Opp'n at 5–8 (raising no argument as to general jurisdiction).

Instead, the parties' arguments focus on the Court's specific jurisdiction over Brady. Courts in this Circuit follow a two-step test in assessing specific jurisdiction: first, the court "decide[s] whether statutory jurisdiction exists under the District's long-arm statute"; "if it does, then [the court] must determine whether an exercise of jurisdiction would comport with constitutional limitations." Forras v. Rauf, 812 F.3d 1102, 1105–06 (D.C. Cir. 2016) (citing GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000)).  If the District of Columbia's long-arm statute does not provide for jurisdiction, the Court need not decide whether exercising jurisdiction is consistent with the Due Process Clause.  E.g., Collingsworth v. Drummond Co., 839 F. App'x 567, 568 & n.1 (D.C. Cir. 2021) (per curiam).

The District's long-arm statute, D.C. Code § 13-423, provides several bases for a court's exercise of specific personal jurisdiction, of which two are relevant here:

> A District of Columbia court may exercise personal jurisdiction over a person . . .
> as to a claim for relief arising from the person's (1) transacting any business in the
> District of Columbia; . . . [or] (3) causing tortious injury in the District of Columbia
> by an act or omission in the District of Columbia.

D.C. Code § 13-423(a).  The statute also specifically requires that, "[w]hen jurisdiction over a person is based solely upon [§ 13-423], only a claim for relief arising from acts enumerated in this section may be asserted against him."  Id. § 13-423(b).  TELG argues that paragraphs (a)(1) and (a)(3) support the Court's exercise of personal jurisdiction over Brady in this matter.  See Pl.'s Opp'n at 6–10.[3]  The Court will take these two arguments in turn.

### A.  Paragraph (a)(1)

Courts in the District of Columbia may exercise personal jurisdiction over a person with respect to claims "arising from the person's . . . transacting any business in the District of Columbia."  D.C. Code § 13-423(a)(1).  This provision of the D.C. long-arm statute "is coextensive with the due process clause of the Fifth Amendment,"[4] e.g., Jackson v. George, 146 A.3d 405, 413 (D.C. 2016) (citation omitted); Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004), such that "a trial court's exercise of personal jurisdiction must satisfy the 'minimum contacts' requirement of the due process clause in addition to the 'arising from' requirement of section 13-

---

[3] Since TELG has failed to argue that Brady is subject to personal jurisdiction under any of the other five paragraphs of § 13-423, "the Court treats any jurisdictional arguments premised on th[o]se sections of the District of Columbia's long-arm statute as conceded."  Budik v. Dartmouth-Hitchcock Med. Ctr., 937 F. Supp. 2d 5, 13 (D.D.C. 2013) (citing Lewis v. District of Columbia, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (per curiam)).

[4] Plaintiff appears to suggest that Brady waived his challenge to the Court's personal jurisdiction by failing to explicitly discuss the Due Process Clause and instead discussing only the long-arm statute.  See Pl.'s Opp'n at 5–6.  This objection is meritless.  Brady devotes three pages in his motion to the issue of personal jurisdiction, responding to each of TELG's arguments and attaching a declaration in support.  See Def.'s Mot. at 6–8; Brady Decl.  His focus on the text of the long-arm statute rather than on federal case law does not negate this discussion.  Indeed, as previously noted, courts look to the long-arm statute first and need not address the Due Process Clause if the case does not fall within one of § 13-423(a)'s categories.  Collingsworth, 839 F. App'x at 568 & n.1.

423(b)."  Jackson v. Loews Washington Cinemas, Inc., 944 A.2d 1088, 1092–93 (D.C. 2008) (citing Shoppers Food Warehouse v. Moreno, 746 A.2d 320, 324–25 (D.C. 2000) (en banc)).

The fundamental rule of specific jurisdiction under the Due Process Clause is that the defendant must have "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice."  Ford, 141 S. Ct. at 1024 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316–17 (1945)).  Those minimum contacts "must be the defendant's own choice and not 'random, isolated, or fortuitous.'"  Id. at 1025 (quoting Keeton v. Hustler Mag., Inc., 465 U.S. 770, 774 (1984)).  Rather, a "defendant . . . must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'"  Id. at 1024 (second alteration in original) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  These limitations are based in "an idea of reciprocity between a defendant and a State: When (but only when) a [defendant] 'exercises the privilege of conducting activities within a state'—thus 'enjoy[ing] the benefits and protection of [its] laws'—the State may hold the [defendant] to account for related misconduct."  Id. at 1025 (second and third alterations in original) (quoting Int'l Shoe, 326 U.S. at 319); accord id. (noting that specific jurisdiction rules should "provide[] defendants with . . . knowledge that a particular activity may subject it to the jurisdiction of a foreign sovereign." (cleaned up)).

In this case, TELG points to two actions that purportedly satisfy the minimum-contacts test.  First, TELG claims that the very act of "infringing the trademark of a D.C.-based entity, and . . . doing so willfully" gives this Court personal jurisdiction.  Pl.'s Opp'n at 6.  Because Brady's alleged infringement harms TELG in D.C., the argument goes, the District has a sufficient connection with this lawsuit to support specific jurisdiction.  But this argument flatly contradicts

Supreme Court precedent: "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden v. Fiore, 571 U.S. 277, 290 (2014). "[M]ere injury to a forum resident is not a sufficient connection to the forum." Id. TELG's suggestion that the Court look only to the situs of its injury would "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis," id. at 289, in clear violation of Walden.[5]

The only thing approaching a claim of purposeful availment is TELG's assertion that Brady's infringement was "willful[,] with the deliberate intent to trade on the goodwill of TELG's marks," Compl. ¶ 33—in essence, a claim that he targeted the D.C.-based TELG for infringement. But this supposed targeting is not supported by any factual allegations; it is instead precisely the kind of "conclusory allegation[]" on which a court "cannot rely" when assessing personal jurisdiction. E.g., Marsoun, 525 F. Supp. 2d at 211. And even if the Court could credit TELG's assertion, it would likely still be insufficient. In Walden, the Supreme Court clarified that a defendant's actions in one state do not "create sufficient contacts with [the forum state] simply because he allegedly directed his conduct at plaintiffs whom he knew had [forum state] connections." 571 U.S. at 289. Instead, as discussed further below, the defendant's conduct must connect him to the forum itself, not just to a forum resident. See id. at 287–88. To hold otherwise would "improperly attribute[] a plaintiff's forum connections to the defendant and make[] those

---

[5] TELG cites Young v. New Haven Advocate, 315 F.3d 256 (4th Cir. 2002), for the proposition that "the place that the plaintiff feels the alleged injury is plainly relevant to the jurisdictional inquiry." Pl.'s Opp'n at 6–7 (quoting Young, 315 F.3d at 262). In reality, Young undercuts TELG's argument here: after the excerpt quoted by TELG, the Fourth Circuit clarified that, although the place of injury is relevant, it "must ultimately be accompanied by the defendant's own sufficient minimum contacts with the state if jurisdiction is to be upheld." Young, 315 F.3d at 262 (cleaned up) (quoting ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 626 (4th Cir. 1997)). The Young court also "emphasized how important it is . . . to look at whether the defendant has expressly aimed or directed its conduct toward the forum state." Id. In short, nothing in Young—or any other case for that matter—authorizes specific jurisdiction based solely on the plaintiff's injury in the forum state.

connections decisive in the jurisdictional analysis." Id. at 289 (internal quotation marks and citation omitted). TELG's first theory of specific jurisdiction under paragraph (a)(1) thus fails.

TELG's second argument is that Brady's June 15 Letter, in which he threatened to bring a class action lawsuit against TELG for its alleged unauthorized practice of law in California, provides the requisite "minimum contacts."[6] See Pl.'s Opp'n at 7. Characterizing this letter as "an attempt to gain further leverage while infringing its trademark[] and to exacerbate the harm to TELG's goodwill and reputation," TELG states that the letter "form[s] an important part of TELG's claim for unfair competition under [15 U.S.C. § 1125]." Pl.'s Opp'n at 7. And since Brady sent that letter to attorneys representing a District of Columbia entity, plaintiff contends, this Court has specific jurisdiction over Brady on that basis. See id. at 8; see also Compl. ¶ 5 (relying on the June 15 Letter in its allegations in support of the Court's jurisdiction over Brady).

Setting to the side whether TELG's claims in this suit actually arise from the June 15 Letter, see D.C. Code § 13-423(b)—a contention about which the Court has its doubts—the June 15 Letter is still insufficient to support specific personal jurisdiction in this suit. The key case here—though not cited by either party—is Calder v. Jones, 465 U.S. 783 (1984). In Calder, entertainer Shirley Jones brought suit in California state court against the author and editor of an allegedly libelous story about her in the National Enquirer, id. at 785–86, and the Court held that, although the article was written and edited in Florida, California could exercise specific jurisdiction over the defendants, id. at 791. The Court noted that the article "concerned the California activities of a

---

[6] Brady objects to plaintiff's reliance on the June 15 Letter on the grounds that it is protected by Federal Rule of Evidence 408, Def.'s Mot. at 7–8, but this objection is without merit. A court's determination regarding personal jurisdiction is not governed by the Federal Rules of Evidence, see Mwani, 417 F.3d at 7, and even if it were, Rule 408 prohibits the admission of "statement[s] made during compromise negotiations" only if offered "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement." Fed. R. Evid. 408(a); see also Fed. R. Evid. 408(b) ("The court may admit this evidence for another purpose . . . ."). TELG's reliance on the June 15 Letter to demonstrate personal jurisdiction is not for either of these proscribed purposes.

California resident," id. at 788, and that "the brunt of the harm . . . was suffered in California," such that California was thus "the focal point both of the story and of the harm suffered," id. at 789. Moreover, because defendants' "actions were expressly aimed at California," they "knew [the article] would have a potentially devastating impact upon respondent," and "they knew that the brunt of that injury would be felt by [Jones] in the State in which she lives and works," the defendants "must reasonably anticipate being haled into court there to answer for the truth of the statements made in their article." Id. at 789–90 (internal quotation marks and citation omitted).

Although Calder resembles the facts of this case if you squint, the resemblance is specious. Whereas the article at issue in Calder was so fully about the forum state that it was the article's "focal point," id. at 789, the June 15 Letter principally concerns not D.C. but California. Even more importantly, however, a unanimous Supreme Court has since clarified that "[t]he crux of Calder was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff," and "[t]he strength of that connection was largely a function of the nature of the libel tort," which requires that third parties (in California) read the allegedly libelous material. Walden, 571 U.S. at 287–88. As explicated in Walden, then, Calder held that the article's focus on California, its wide circulation in that state, and the inherently public nature of the tort alleged meant that "the 'effects' caused by the defendants' article . . . connected the defendants' conduct to California, not just to a plaintiff who lived there." Id. at 288; see also id. at 290 ("Calder made clear that mere injury to a forum resident is not a sufficient connection to the forum.").

To the extent the June 15 Letter had any effects in the District of Columbia, they were quite limited, likely cabined to TELG alone. See Pl.'s Opp'n at 7 (calling the letter "an attempt . . . to exacerbate the harm to TELG's goodwill and reputation"). Indeed, unlike the article in Calder,

there is no indication that the June 15 Letter was even seen by anyone other than TELG and its attorneys. Even assuming that Brady purposefully directed his letter to TELG's attorneys knowing that it would have an impact in the District, such a limited effect in the forum is insufficient to support specific jurisdiction under <u>Walden</u>. <u>See, e.g.</u>, <u>Janus v. Freeman</u>, 840 F. App'x 928, 931 (9th Cir. 2020) (noting that "the mere making of defamatory comments to persons known to be Californians is not sufficient, without more, to establish purposeful direction under <u>Walden</u>" and holding that a "handful" of allegedly defamatory online messages to plaintiff's employees did not create "reputation-based effects of the sort that would be sufficient to warrant haling [the defendant] into a California court").

In other words, TELG has failed to show that "the 'effects' caused by the [June 15 Letter] . . . connected the defendants' conduct to [the District of Columbia], not just to a plaintiff who lived there." <u>See</u> <u>Walden</u>, 571 U.S. at 288. Instead, as with its other argument under paragraph (a)(1), TELG seeks to establish specific jurisdiction based solely on injury to a forum resident. Supreme Court precedent precludes personal jurisdiction on such a theory. Paragraph (a)(1) therefore cannot support the Court's jurisdiction over Brady.

### B. **Paragraph (a)(3)**

Plaintiff also relies on paragraph (a)(3) of the D.C. long-arm statute, which provides that a court may exercise jurisdiction over a defendant "as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. Code § 13-423(a)(3). Paragraph (a)(3) thus has two prongs: an injury requirement ("tortious injury in the District of Columbia") and an act requirement ("by an act or omission in the District of Columbia"). <u>See, e.g.</u>, <u>Moncrief v. Lexington Herald-Leader Co.</u>, 807 F.2d 217, 221 (D.C. Cir. 1986) ("[In paragraph (a)(3),] the District of Columbia has chosen to

11

distinguish between the act of the defendant and the injury it causes."). Importantly, and unlike paragraph (a)(1), paragraph (a)(3) "is a precise and intentionally restricted tort section which stops short of the outer limits of due process." Forras v. Rauf, 812 F.3d 1102, 1107 (D.C. Cir. 2016) (cleaned up) (quoting Moncrief, 807 F.2d at 221).

The two-pronged nature of paragraph (a)(3) appears to have been lost on TELG, however. Instead, its brief exclusively discusses where TELG suffered injury without even mentioning an act in D.C. See Pl.'s Opp'n at 9–10. Regardless of where the injury occurred, without an act or omission in the District of Columbia causing that injury, paragraph (a)(3) is unavailable as a basis for personal jurisdiction. And even assuming that TELG implicitly argued that the June 15 Letter satisfies paragraph (a)(3)'s act requirement, that argument fails. Courts in this Circuit have repeatedly held that the transmission of statements from other states into the District of Columbia does not constitute an "act . . . in the District of Columbia" for purposes of paragraph (a)(3). See, e.g., Forras, 812 F.2d at 1107; Moncrief, 807 F.2d at 219–221; Margoles v. Johns, 483 F.2d 1212, 1218 (D.C. Cir. 1973); Doe v. City of Bos., Civ. A. No. 20-2948 (CKK), 2021 WL 2457961, at *5 (D.D.C. June 16, 2021); Nat'l Bank of Washington v. Mallery, 669 F. Supp. 22, 27 (D.D.C. 1987). Absent any allegation of or evidence demonstrating an act or omission in the District of Columbia causing TELG tortious injury, paragraph (a)(3) does not support this Court's jurisdiction over Brady.

\*      \*      \*      \*      \*

In sum, neither of the two paragraphs of the D.C. long-arm statute relied on by TELG authorize personal jurisdiction in this case. Neither Brady's adoption of the allegedly infringing "San Diego Employment Law Group" name nor his transmission of the allegedly tortious June 15 Letter to TELG's attorneys constitutes the kind of purposeful connection with the District of

Columbia necessary for personal jurisdiction under the D.C. long-arm statute or the Due Process Clause.  In addition, TELG failed even to allege an injurious "act . . . in the District of Columbia" as required by paragraph (a)(3), and so far as the Court can tell, no such act occurred.  TELG has thus failed to meet its burden of demonstrating jurisdiction, and the Court concludes that it does not possess personal jurisdiction over the sole defendant in this matter.

## II.      Transfer Under 28 U.S.C. § 1406(a)

When a court determines that it lacks personal jurisdiction over the defendant, it has two options: dismiss the case, or transfer it to a judicial district "in which it could have been brought." 28 U.S.C. § 1406(a).[7]  District courts are enjoined to transfer rather than dismiss a case if doing so "be in the interest of justice."  28 U.S.C. § 1406(a).  Whether to transfer "rests within the sound discretion of the district court," Gage v. Somerset Cnty., 369 F. Supp. 3d 252, 258 (D.D.C. 2019) (quoting Naartex, 722 F.2d at 789), but, in general, "the interest of justice requires transferring such cases to the appropriate judicial district rather than dismissing them," Doe, 2021 WL 2457961, at *10 (quoting Sanchez ex rel. Rivera-Sanchez v. United States, 600 F. Supp. 2d 19, 22 (D.D.C. 2009)).  In other words, a district court contemplating transfer under § 1406(a) must make three findings: "(1) the transferor court is a 'wrong' venue, (2) the case 'could have been brought' in the transferee court, and (3) transfer to the transferee court would be 'in the interest of justice.'" Freedman v. Suntrust Banks, Inc., 139 F. Supp. 3d 271, 283 (D.D.C. 2015) (quoting 28 U.S.C. §1406).

---

[7] Although § 1406(a) only explicitly authorizes transfer when "a case la[ys] venue in the wrong division or district," it is well-established that "[a] court may transfer a case to another district even though it lacks personal jurisdiction over the defendant[]."  Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983) (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962)); accord, e.g., Doe, 2021 WL 2457961, at *10 (citing Sinclair v. Kleindienst, 711 F.2d 291, 294 (D.C. Cir. 1983)).

The Court has already concluded that this District is the "wrong" venue for this action, as the Court lacks personal jurisdiction over the only defendant.  Moreover, the parties agree that the case could have been brought in the Southern District of California—since Brady lives and works in that District, venue is proper and Mr. Brady is subject to general jurisdiction there.  See Pl.'s Opp'n at 20; Def.'s Mot. at 19.  Finally, the Court finds that transferring this case is in the interest of justice.  Forcing TELG to re-file its case benefits no one, and this Court has already made several determinations which may be binding as the law of the case but which might otherwise need to be relitigated.  See generally 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3867 (4th ed. 2021).

In addition, "the Court notes that prosecuting this action in the [Southern District of California] appears both logical and convenient."  Doe, 2021 WL 2457961, at *11.  Many of Brady's substantive arguments turn on interpretations of California law and, indeed, of the Local Rules of the District Court for the Southern District of California.  It is thus highly logical that the case proceed in that Court.  Litigating in the Southern District of California is also much more convenient for Brady, who is 78 years old and has been advised by a doctor to avoid travelling during the COVID-19 pandemic.  See Decl. of Brij Gupta, M.D. [ECF No. 25-3] ¶ 3.  And seeing as TELG specifically requested transfer rather than dismissal, neither it nor its North Carolina-based attorneys will be seriously inconvenienced by the transfer.  Accordingly, the Court finds that transfer to the Southern District of California under 28 U.S.C. § 1406(a) is both available and in the interest of justice.

## Conclusion

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over defendant Dennis Brady d/b/a San Diego Employment Law Group.  Rather than dismiss the matter,

however, the Court will transfer this case to the Southern District of California pursuant to 28

U.S.C. § 1406(a).  In addition, the Court will reserve judgment on Brady's motion to dismiss under

Rule 12(b)(6), with the intention that the motion will be ripe for decision by the transferee court

without the need for Brady to refile it.  An accompanying Order will issue on this date.

_____/s/_____

JOHN D. BATES

United States District Judge

Dated: <u>January 4, 2022</u>